IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 5, 2024

## MIDSOUTH CONSTRUCTION, LLC V. DANIEL BURSTINER ET AL.

**Appeal from the Chancery Court for Maury County**
No. 20-551      Christopher V. Sockwell, Judge

_____

### No. M2023-01396-COA-R3-CV

_____

This appeal concerns a homeowner's attempt to vacate an arbitration award entered after a dispute arose regarding the homeowner's contract with a construction company to build a deck on the homeowner's property. We have determined that the trial court properly confirmed the arbitration award and that the contractor waived any argument that the trial court erred by not awarding the company its attorney's fees at the trial level. However, we remand the matter to the trial court for a determination of the contractor's reasonable appellate attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE and KRISTI M. DAVIS, JJ., joined.

Daniel Burstiner, Columbia, Tennessee, pro se.

Peter A. Angelov, Nashville, Tennessee, for the appellee, MidSouth Construction, LLC.

### OPINION

FACTUAL AND PROCEDURAL HISTORY

This case involves a challenge to an arbitration award. In August 2020, Daniel Burstiner entered into a contract with MidSouth Construction, LLC ("MidSouth") to remove an existing deck structure and build a new deck at Mr. Burstiner's property in Maury County. The contract included the following language regarding disputes between the parties:

Any controversy or claim arising out of or relating to the Agreement, or breach thereof, other than OWNER'S or MIDSOUTH'S default, shall be resolved by mutual agreement of the parties. Failing such agreement, disputes shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (AAA) with one arbitrator. The locale of any arbitration hearing shall be Davidson County, Tennessee. Any judgment upon the award rendered by the Arbitrator shall be binding on both parties and may be entered in any court having jurisdiction thereof. The Arbitrator's fees shall be shared equally by the OWNER and MIDSOUTH, and other service charges of the AAA shall be paid by the party incurring same according to the established AAA procedure. If it becomes necessary for either party to enforce provisions of this Agreement, the prevailing party shall be entitled to any reasonable attorneys' fees, court costs, or other legal fees incurred herein.

Later that month, the parties signed an addendum to the contract, which increased the scope of work and correspondingly increased the price. This resulted in a contract price of $55,586.76. The parties later became involved in a dispute over the quality of the work, which resulted in the underlying action.

In November 2020, MidSouth's attorney sent a demand letter to Mr. Burstiner stating that he continued to owe $29,561.32 and provided notice to Mr. Burstiner that MidSouth would be filing a contractor's lien against the property. On November 19, 2020, MidSouth filed a verified complaint in the Chancery Court for Maury County against Mr. Burstiner, Aixia Burstiner, Harvey Burstiner, Judith Burstiner, and Quicken Loans, Inc. (collectively "the defendants"),[1] asserting claims for breach of contract, unjust enrichment, and for a lien to be placed on the property. MidSouth contemporaneously filed a motion to stay the litigation and compel arbitration. On May 12, 2021, the trial court entered an agreed order staying the litigation and submitting the matter to arbitration.

In September 2022, the parties entered into an arbitration agreement, which included the following:

WHEREAS, Claimant and Respondent (collectively the "Parties") entered into a contract with an effective date of August 10, 2020, and certain disputes and claims have arisen by and between the Parties in relation to their obligations under the contract. The Parties hereby agree to arbitrate such claims and disputes, and do hereby supplement and amend their agreement by and in this Agreed Submission to Arbitration.

---

[1] Aixia Burstiner is Mr. Burstiner's wife. Harvey and Judith Burstiner are Mr. Burstiner's parents and are tenants with rights of survivorship in the property. Quicken Loans is a mortgagee with respect to the property.

THEREFORE, for valuable consideration, the Parties agree as follows:

1. <u>Submission</u>. Any and all disputes, claims and counterclaims of any kind by and between the Parties arising from their agreement shall be and hereby are submitted to binding Arbitration pursuant to and in accordance with T.C.A. 29-5-301, et. seq. In addition, the Parties agree that the rules or procedures set out more specifically in paragraph 6 shall govern this proceeding.

The parties engaged in arbitration on February 6 and 7, 2023. On February 28, 2023, the arbitrator issued an award, in which he made numerous findings regarding the poor quality of the deck, including that "there were multiple aesthetic problems with the work performed," such as "unsightly and poor workmanship" and "omissions" that necessitated repair. The arbitrator found next that, after Mr. Burstiner raised issues with the quality of the work, workers from MidSouth had attempted to correct the defects on two separate occasions. Despite these attempts, the deficiencies remained, and Mr. Burstiner thereafter refused to allow MidSouth onto the property, even though between November 2020 and the fall of 2022, MidSouth repeatedly offered to return to the property. The arbitrator found that, "[a]lthough, clearly defective work existed and continues to exist on the premises, it is incumbent upon a party to a contract to allow reasonable notice of the defects alleged in the premises and provide a reasonable opportunity to effectuate a cure." The arbitrator concluded that the defendants had breached their duty to provide MidSouth with a reasonable opportunity to correct defective work.

The arbitrator awarded MidSouth the remaining balance owed under the contract, $29,561.32. Due to the remaining problems with the deck, the arbitrator determined that the defendants were entitled to a set-off of $16,920.67. The arbitrator also awarded MidSouth $33,859 in attorney's fees, $8,656.21 in arbitration costs, and the arbitrator's fees of $4,381.11. The award to Midsouth, therefore, totaled $50,827.77.

On March 23, 2023, Mr. Burstiner, acting pro se,[2] filed a "petition to vacate arbitration award," asserting that MidSouth had breached the contract in various ways. As

---

[2] Mr. Burstiner filed this petition without the knowledge of his counsel. On May 15, 2023, the trial court granted his counsel's motion to withdraw, and Mr. Burstiner continued through the litigation pro se. Troublingly, Mr. Burstiner signed numerous filings in the trial court in which all of the Burstiners were listed as parties and in which it appears Mr. Burstiner is representing the other parties as well as himself. The "right of self-representation extends only to the individual's right to conduct and manage his or her *own* case; a non-attorney may not conduct litigation on behalf of an entity or another individual, because doing so would constitute the unauthorized practice of law." *Beard v. Branson*, 528 S.W.3d 487, 495 (Tenn. 2017). Mr. Burstiner is the only party to file a notice of appeal, and therefore, is only representing himself on appeal.

relief, the petition sought the vacatur of the award, an award of fees and costs, and $45,000 as compensation for the cost of repairing the defective work. The following month, MidSouth filed a response to the petition and contemporaneously filed a motion for the trial court to confirm the award. Mr. Burstiner filed a response asserting that MidSouth was attempting to distract the court from the real issue, which he asserted was "whether the award is fair and valid," and reiterating the request for the award to be vacated.

After a hearing on April 21, 2023, the trial court entered an order withholding a ruling on the competing motions and directing Mr. Burstiner to file the grounds on which he believed the award could be vacated. After the parties submitted various competing filings, the trial court entered an order on September 19, 2023, stating that, although the court believed that there may have been errors of law in the award, this was not a sufficient basis to vacate the award because the statute "only allows setting aside or vacating an arbitrator's award in extremely narrow circumstances, that do not apply in this case[.]" The trial court, therefore, confirmed the award and declined to award MidSouth its attorney's fees for the trial court proceedings.

Mr. Burstiner timely appealed and presents the following issues, which we have restated[3] for clarity: whether grounds existed sufficient to vacate the arbitration award and whether the court erred by not awarding Mr. Burstiner damages from the contract. MidSouth presents the additional issues of whether the trial court erred in denying MidSouth's request for attorney's fees for the post-arbitration proceedings and whether MidSouth is entitled to attorneys' fees on appeal.

STANDARD OF REVIEW

Tennessee is one of the many states that has adopted the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301 to -320 (2012).[4] Our state's version, the Tennessee Uniform Arbitration Act ("the TUAA"), "'governs the scope of judicial review of arbitration awards.'" *Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445, 447-48 (Tenn. 1996) (quoting *Int'l Talent Grp., Inc. v. Copyright Mgmt., Inc.*, 769 S.W.2d 217, 218 (Tenn. Ct. App. 1988)). "Judicial review of arbitration decisions is statutorily limited, and any judicial review must be conducted within those limits." *Id.* at 450.

---

[3] The issues as presented by Mr. Burstiner are stated as: "Determining the court's authority to vacate an arbitration award thereby vacating the award; and determining the total award to the defendant." These are not properly stated issues and, as such, we restate the issues based on what we discern them to be.

[4] The Tennessee Uniform Arbitration Act was amended in 2023. *See* 2023 TENN. PUB. ACTS, ch. 319 § 1, effective July 1, 2023. The previous version of the statute was in effect at the time of the filing of MidSouth's complaint. Therefore, the prior version governed the parties' arbitration and all citations in this opinion to Tenn. Code Ann. § 29-5-301 to -320 will be to the prior version.

In reviewing a trial court's decision in an arbitration case, we will uphold the trial court's findings of fact unless they are "clearly erroneous." *Id.* Furthermore, we cannot consider the merits of an award, even in instances where the parties allege that the award is based on factual errors or misrepresentations of the contract. *Id.* We review the trial court's findings on matters of law de novo, *Pugh's Lawn Landscape Co., Inc. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 258 n.4 (Tenn. 2010), but "with the utmost caution, and in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Arnold*, 914 S.W.2d at 450.

ANALYSIS

Although Mr. Burstiner was represented by counsel in the initial trial court proceedings and throughout arbitration, he elected to proceed pro se on the petition to vacate the arbitration award. Therefore, a discussion of how our Court interacts with unrepresented litigants is warranted. As we have previously explained:

> Parties who decide to represent themselves are entitled to equal treatment by the court. *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). The court should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Id.* However, the court must also be mindful of the boundary between fairness to the pro se litigant and unfairness to the pro se litigant's adversary. *Id.* While the court should give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs, it must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

*Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016).

Although we give pro se litigants some leeway, we remain obligated to provide fair treatment to both parties. As stated above, pro se litigants are not exempt from our Court's rules. Chief among these rules are those governing the requirements for appellate briefs, and Mr. Burstiner's brief fails to conform to those requirements in various ways. In particular, Tennessee Rule of Appellate Procedure 27 requires that a brief contain "a statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record" and "a concise statement of the applicable standard of review." TENN. R. APP. P. 27(a)(6), (a)(7)(B). Mr. Burstiner's brief fails to include citations to the record or a clear statement of the applicable standard of review. Further, the

statement of facts is primarily composed of argument[5] and does not recite the facts relevant to the appeal with citation to the record.[6]

We have concluded that we can address the arguments raised in the brief without crossing the boundary between fairness to Mr. Burstiner and unfairness to MidSouth. Therefore, we exercise our discretion to waive the briefing requirements and will address the merits of the issues raised. *See* TENN. R. APP. P. 2; *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) ("[T]here are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits.").

I.      Whether the court correctly affirmed the award

Mr. Burstiner asserts that the trial court erred in failing to vacate the arbitration award based on MidSouth's failure to comply with the contract and the arbitrator's errors of fact and law. In its order, the trial court found that none of the grounds found in the relevant statute were present and that, therefore, it lacked the authority to vacate the award. For the reasons discussed below, we agree with the trial court.

A trial court reviewing an arbitration award "play[s] only a limited role in reviewing the decisions of arbitrators" and should, therefore, apply a narrow standard of review. *Arnold*, 914 S.W.2d at 448. In those situations where a party has agreed to arbitrate, this decision has the effect of relinquishing a large portion of the party's right to have a court decide the dispute on the merits. *Id*. (citing *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Judicial review remains available; however, a trial court will only overturn the arbitrator's decision in "'very unusual circumstances.'" *Id.* (quoting *Kaplan*, 514 U.S. 938 at 942).

The reasons for which a trial court may vacate an award are statutorily defined. *Id.* As explained by our Supreme Court, "[t]he statute itself provides that upon application of a party to the arbitration, the trial court 'shall confirm an award, unless, within the time limits hereinafter imposed, grounds are urged for vacating or modifying or correcting the award.'" *Id.* (quoting Tenn. Code Ann. § 29-5-312). Relatedly, "[s]ection 29-5-313

---

[5] For example, in the statement of facts section of Mr. Burstiner's appellate brief, he asserts that "The recent US Supreme Court decision regarding the 1984 Chevron decision . . . reverses that authority and gives the court the right to vacate an arbitration award with regards to findings of fact by the arbitrator."

[6] We must also address the materials Mr. Burstiner has attached to his brief, which he has labeled as exhibits. Some of these exhibits are decisions of various courts; however, other materials are pieces of evidence that do not appear in the record before us. "It is well-settled in the law of appellate practice that attachments to briefs as evidentiary material are not part of the appellate record and cannot be considered by the Court." *Kries v. Kries*, No. E2004-00132-COA-R3-CV, 2004 WL 2709207, at *2 (Tenn. Ct. App. Nov. 29, 2004). For this reason, we will not consider any materials attached to Mr. Burstiner's brief that are not properly included in the appellate record before us.

provides that the trial court 'shall' vacate an award under certain specifically enumerated circumstances." *Id.* The statute as written at the time of the underlying proceeding required a court to vacate an award where:

> (A) The award was procured by corruption, fraud or other undue means;
> (B) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> (C) The arbitrators exceeded their powers;
> (D) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to § 29-5-306, as to prejudice substantially the rights of a party; or
> (E) There was no arbitration agreement and the issue was not adversely determined in proceedings under § 29-5-303 and the party did not participate in the arbitration hearing without raising the objection.

Tenn. Code Ann. § 29-5-313(a)(1).

Mr. Burstiner's argument on appeal is that the trial court erred in declining to vacate the arbitration award because the award was "fundamentally irrational." We find this argument unavailing. Before the trial court, Mr. Burstiner submitted a lengthy brief putting forth his ground for vacating the arbitration award. The following excerpt summarizes the grounds presented by Mr. Burstiner to the trial court for his request to vacate the arbitration award:

> Rather than belabor the point further, it is clear that the Burstiners provided ample notice of defects and an ample opportunity to cure and never breached the contract (Exhibit 8) and never attempted to terminate the contract thereby rendering the arbitrator's award (Exhibit 9) invalid as it is based upon invalid assumptions which conforms to the definition of "undue means." (29-5-324 (a)(1)). Based upon the facts presented here, it is evident that the arbitrator exceeded his powers as defined above.

The trial court summarized the relief requested by Mr. Burstiner as asking for "an award of damages to correct alleged defected work, in addition to replacement of alleged substandard lumber, along with repairs for [Mr. Burstiner's] HVAC system." However, the court reiterated that it did not have the authority to review findings of fact by the arbitrator and that, therefore, the court could not make new findings of fact or make changes to the arbitrator's findings of fact. The court acknowledged that it had "struggled to reconcile the findings of facts with the application of the law made in the Award." Specifically, the court was troubled by the arbitrator's finding that Mr. Burstiner had not given MidSouth a reasonable opportunity to cure the defective work, stating "The findings within the Award

were that there were two opportunities to correct the defects which could very well be a reasonable opportunity to cure under Tennessee law." The court found that the facts as found by the arbitrator likely indicated a "substantial breach of contract" and stated that it would not have awarded MidSouth its attorney's fees.

The trial court concluded that these findings were insufficient to overturn the arbitration award. The court noted that, by statute, "the fact that the relief was such that it could not or would not be granted by a Court of law or equity is not ground for vacating or refusing to confirm the award." Tenn. Code Ann. § 29-5-313(a)(2). The court, citing *Arnold*, concluded that an arbitration award is not subject to vacatur for a mistake of fact or law. We find no error in this analysis.

In his appellate brief, Mr. Burstiner continues to assert that the arbitrator made such egregious errors of fact or law that the award was fundamentally irrational[7] and must be vacated. Mr. Burstiner also lists the ways he asserts MidSouth breached the contract. In our review of the trial court's decision, we are not permitted to consider the merits of an arbitration award, even in instances where the award is based on factual errors. *See Arnold*, 914 S.W.2d at 450; *D & E Constr. Co., Inc. v. Robert J. Denley Co., Inc.*, 38 S.W.3d 513, 518 (Tenn. 2001). Mr. Burstiner has failed on appeal to assert any statutory ground for vacatur or shown error sufficient for this Court to reverse the trial court. Mr. Burstiner's remaining arguments present policy-based objections to arbitration, which are not within the purview of this Court in a review of the trial court's decision here. We affirm the trial court and, therefore, find Mr. Burstiner's remaining issue to be pretermitted.

II.     MidSouth's request for attorney's fees

MidSouth presents the additional issues of its attorney's fees from the trial court and on appeal. We will address each issue in turn and will first address the trial court's decision not to award MidSouth its attorney's fees incurred in prosecuting the confirmation of the award.

On appeal, MidSouth asserts that the trial court erred because the construction contract included a provision for awarding fees. However, based upon our review of the record, MidSouth's only basis for its request for attorney's fees in the trial court was the statutory provision found in Tenn. Code Ann. § 29-5-315. A party cannot raise an issue on appeal that it did not present first in the trial court. *Vodafone Ams. Holdings, Inc. &*

---

[7] Mr. Burstiner cites this language from *Arnold*. In that case, the Court expressly rejected irrationality as a reason for vacating an award under Tennessee law, holding "that under Tenn. Code Ann. § 29-5-313(a) an arbitration award cannot be vacated because it is 'irrational.'" *Id.* at 451. Our Supreme Court did note that this is a reason for vacatur under the federal standard; however, in the present case, the trial court analyzed the arbitration award under Tennessee law rather than the Federal Arbitration Act, and Mr. Burstiner has not asserted that the trial court erred by applying the TUAA's standard.

*Subsidiaries v. Roberts*, 486 S.W.3d 496, 512 (Tenn. 2016); *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 76 (Tenn. Ct. App. 2016). "'Issues raised for the first time on appeal are waived.'" *Stephens*, 529 S.W.3d at 76 (quoting *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 670 (Tenn. 2013)). Further, MidSouth fails to set forth any argument to establish how the trial court abused its discretion when it declined to award MidSouth its attorney's fees pursuant to the statute. *See D & E Const. Co.*, 38 S.W.3d at 516 n.6 (stating that a trial court has the discretion to award attorney's fees for post-arbitration proceedings). We, therefore, decline to address whether the trial court erred in not awarding MidSouth its attorney's fees.

Finally, MidSouth requests its attorney's fees incurred on appeal. In this request, MidSouth cites the construction contract and its provision regarding attorney's fees. Whether a contract creates a right to attorney's fees presents a question of law. *Khan v. Regions Bank*, 584 S.W.3d 418, 429 n.7 (Tenn. Ct. App. 2019). Once a court has determined that a contract is valid and contains a mandatory fee provision, a court lacks the discretion to deny an award of fees. *Tenn. Homes v. Welch*, 664 S.W.3d 1, 21 (Tenn. Ct. App. 2022). The relevant language of the contract provides that: "If it becomes necessary for either party to enforce provisions of this Agreement, the prevailing party shall be entitled to any reasonable attorneys' fees, court costs, or other legal fees incurred herein[.]" When Mr. Burstiner filed this appeal seeking to have the confirmation of the arbitrator's award reversed, it became necessary for MidSouth to respond to enforce the arbitration portion of the agreement. As the prevailing party on appeal, MidSouth is entitled to its reasonable attorney's fees incurred on appeal. The matter is, therefore, remanded for a calculation of MidSouth's reasonable appellate attorney's fees. [8]

CONCLUSION

The judgment of the trial court is affirmed and remanded. Costs of this appeal are assessed against the appellant, Daniel Burstiner, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

[8] MidSouth also requests its attorney's fees pursuant to Tenn. Code Ann. § 27-1-122, the "frivolous appeal" statute. Although we have determined that MidSouth is entitled to its fees under the contract, in instances where a party requests an award of fees under both contractual and statutory authority, even if we determine an award is required under the contract, we remain obligated to "also review the claims for fees or expenses under any applicable statutory authority." *Eberbach v. Eberbach*, 535 S.W.3d 467, 479 (Tenn. 2017).

A frivolous appeal is one without any reasonable chance of success or that is so meritless as to justify a penalty. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). The decision to award damages under this statute is within this Court's discretion. *Id.* We are to use this discretion "sparingly so as not to discourage legitimate appeals." *Id.* Under the circumstances this case presents, we would use our discretion not to award fees under the statute.